Marion KENNELL, Plaintiff,

v.

Robert J. TORRY, Defendant.

Civ. No. 87–4166.

United States District Court,
S.D. Illinois,
Benton Division.

June 1, 1988.

John S. Brewster, Winters, Brewster, Murphy, Crosby & Patchett, Marion, Ill., for plaintiff.

W.A. Armstrong, Mitchell & Armstrong, Ltd., Marion, Ill., for defendant.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on defendant Torry's Motion for Summary Judgment (Document No. 12). The motion's basis is that plaintiff Kennell fails to state a claim for which the relief he requests can be granted. Plaintiff Kennell urges in response that he has an implied cause of action arising out of either the Erosion Act (Soil Conservation Act), 16 U.S.C. § 590a *et seq.* or the Erodible Land and Wetland Conservation and Reserve Program, 16 U.S.C. § 3801 *et seq.* (CRP). Thus, the sole issue to be decided by the Court is whether either of these two enactments affords an implied cause of action to the plaintiff.

### Background

It appears from the record that sometime in 1985 defendant Torry entered into an oral year-to-year lease agreement with plaintiff Kennell concerning the farming of certain property of Torry's situated in Williamson County, Illinois. Under the terms of this agreement profits and expenses of the farming enterprise were to be divided two-thirds to Kennell and one-third to Torry. Apparently, this agreement went without conflict during the 1985 and 1986 crop years. During the spring of 1986, however, it appears that Torry and Kennell decided to try and place the property in the U.S. Department of Agriculture's (U.S. D.A.) Conservation and Reserve Program (CRP).

In making that decision, Torry requested, and Kennell apparently agreed to, a nine-

tenths, one-tenth split of the program payments in favor of Torry. Having thus agreed, the two parties executed an offer to contract with the U.S.D.A. which was subsequently rejected by local authorities because of the disparity in treatment of the owner (Torry) and the tenant (Kennell). Therefore, no contract was ever consummated between Torry and Kennell and the U.S.D.A. This fact is undisputed by Kennell.

Upon rejection of the offer by the U.S. D.A., Torry terminated Kennell's lease and entered into a new lease with a different tenant. The new tenant apparently agreed to the 90–10 split and upon Torry's reapplication to participate in the CRP, the U.S.D. A. gave its approval. Plaintiff Kennell then brought the instant suit claiming that he had not been treated fairly and equitably in the 90–10 arrangement in violation of the Soil Conservation Act and/or the CRP. Kennell does not dispute the fact that neither statute expressly confers a private right of action on tenant farmers such as himself.

### Discussion

■ In determining whether to infer a private cause of action from a federal statute, the focal point is Congress' intent in enacting the statute. *Thompson v. Thompson*, — U.S. —, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988). Unless this Congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy plainly does not exist. *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981).

■ In attempting to divine Congress' intent, the Court is to address four questions: 1) Is the plaintiff one of the class for whose especial benefit the statute was enacted? 2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? 3) Is it consistent with the underlying purposes

of the legislative scheme to imply such a remedy for the plaintiff? and 4) Is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted).

■ Turning to the first inquiry of the *Cort* test, whether the plaintiff is one of the class for whose especial benefit the statute was enacted, the Court's focus is on whether the statute creates a federal right in favor of the plaintiff. *Cort v. Ash*, supra, *id.* The House Report on the Soil Conservation Act (of which CRP is an integral part) states that

It [H.R. 2100] is designed to both reduce the overall tonnage of erosion by taking 25 million acres of highly erodible land out of crop production through the Conservation Reserve, and secondly, to discourage the cultivation or "sodbusting" of highly erodible land which is not now in production.

Another major objective of this bill is to discourage the draining of wetlands or "swampbusting" for the purpose of growing agricultural commodities.

1985 *U.S.Code Cong. & Adm.News*, 1103, 1182.

A fair reading of this language in no way convinces this Court that Congress intended to protect tenant farmers from greedy landowners in enacting the statute.[1] However, the Court's inquiry does not end here, it must next examine the context of the Soil Conservation Act with an eye toward determining Congress' perception of the law that it was shaping or reshaping. *Thompson v. Thompson*, supra, 108 S.Ct. at 516 (citations omitted). In this analysis, the Senate Report on the Act sheds much light.

That report notes:

Under current law, an agricultural producer may participate in numerous feder-

---

1. This conclusion applies only to rights created by the statute itself. It is clear, however, that once a binding contract is entered into between the landowner and his tenant *and* the U.S.D.A., the tenant is protected. *See*, 16 U.S.C. § 3843(c).

al agricultural programs, regardless of the suitability of the land used for the production of agricultural commodities. This policy is inappropriate in light of the increasingly serious soil erosion problems in the United States.... Under the current system, the taxpayers have been paying twice; once for farm support programs and again for the costs of soil erosion.

1985 *U.S.Code Cong. & Adm.News* 1676, 1966–67.

In light of this language, it appears that the enactment of the Soil Conservation Act and the creation of the CRP was not intended to confer a financial benefit on landowners and their tenants, but rather to deny federal agricultural benefits to them if they cultivated highly erodible land. Thus, the class to be especially benefitted is not the farmer or his tenant but, instead, the taxpayers.

Although plaintiff cites language in the unexecuted offer to contract with the U.S.D.A. as a suggestion of congressional intent, it is clear that this protection comes into play *only* after the contract offer is accepted by the agency. Here, the offer was rejected by the agency and the Court finds the language unpersuasive in ascertaining congressional intent. Furthermore, a thorough review of the entire legislative history of the Soil Conservation Act reveals nothing to support the idea that the Act was especially intended to benefit either the plaintiff or tenant farmers in general.

Addressing the second inquiry mandated by *Cort*, whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one, the Court finds no such indication exists. A thorough review of the legislative history of the Soil Conservation Act as expressed in the House and Senate Reports reveals no explicit or implicit indication that Congress intended to create or deny a remedy for the situation Kennell complains of.

The Court does note, however, that it appears the U.S.D.A.'s rules may provide for such a remedy. Title 7, Part 704–28, Code of Federal Regulations (CFR), implicitly recognizes an administrative remedy where a landowner has used coercion, fraud, or misrepresentation to deprive any other person of cost-share assistance or land rental payments. This administrative remedy evolves from U.S.D.A. regulations however, and not from any explicit or implicit mandate. Thus, the Court concludes that there is no express or implied intent of Congress to be gleaned from the legislative history of the Act that would imply either creation or denial of the remedy plaintiff seeks.

The third prong of the *Cort* test requires the Court to determine if recognition of an implied remedy would be consistent with the underlying purposes of the legislative scheme. A review of the previously cited, congressionally articulated, purpose of the Soil Conservation Act and its attendant Conservation and Reserve Program clearly indicates that the underlying purposes of the legislation were to stop cultivation of highly erodible land and to deny other agricultural program benefits (such as crop and commodity subsidies) to owners and producers who persist in cultivating such lands. *See* 1985 *U.S.Code Cong. & Adm. News,* at 1182, 1966–67.

Plaintiff Kennell here seeks an implied remedy against a landowner over conduct that allegedly occurred prior to either party becoming an actual participant in the CRP. Were the purpose of the CRP to subsidize farmers or their tenants, the Court might agree with the plaintiff. However, that is not the purpose of the Act, and the Court believes it would be inappropriate to recognize an implied federal cause of action which interjects a federal court into the administration of federal agricultural programs. This is especially true in light of the fact that it is easy to discern from the legislative history of the Act that Congress intended administration of the CRP to be vested in the Department of Agriculture. For these reasons, the Court finds that recognition of a new private federal remedy for complaints such as plaintiff's would, in fact, be inconsistent with the underlying purposes of the legislative scheme in this area.

The last inquiry required by *Cort*, whether the cause of action is one traditionally relegated to state law, in an area basically the concern of the States, is more problematic. Factually, the controversy submitted in this case sounds in tort—sort of a breach of duty of fair dealing on the part of the landowner. This conclusion is especially true where, as here, no contract was ever formed between either the parties themselves or the parties and the U.S.D.A. Thus, it is clear that plaintiff's claim cannot lie in contract. Otherwise, the Court would be essentially recognizing a federal common law tort claim. The Supreme Court long ago decided that there was no substantive federal common law. *Erie v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). For this Court to recognize an implied cause of action sounding in tort but based solely on federal law would be, in essence, to establish a federal common law cause of action in contravention of the rule of *Erie*, supra. Under *Erie*, this Court would be obliged to apply the general tort law of Illinois in cases such as the instant one where its subject matter jurisdiction is derived from diversity of citizenship and, therefore, the Court feels it would be inappropriate to infer a cause of action sounding in tort based solely on federal law.

For the foregoing reasons, the Court concludes that Congressional intent to create a federal private right of action for redress of plaintiff's alleged injuries cannot be inferred from any source and, therefore, that the essential predicate for implication of a private remedy plainly does not exist. Accordingly, defendant's Motion for Summary Judgment (Document No. 12) is hereby GRANTED.

IT IS, THEREFORE, ORDERED that the Clerk enter judgment in favor of the defendant, Robert J. Torry, and against the plaintiff, Marion Kennell, each party to bear their respective costs.

IT IS SO ORDERED.